IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–00288–EWN– CBS

CHARLES A. MICALE individually and as the Settlor on behalf of the Charles A.
Micale Irrevocable Insurance Trusts for the benefit of his family members,

     Plaintiff,

v.

BANK ONE N.A. (CHICAGO);
BANK ONE TRUST COMPANY, N.A.;
BANC ONE INVESTMENT ADVISORS CORPORATION
     a Wholly Owned Subsidiary of BANK ONE NA;
BANC ONE SECURITIES CORPORATION;
BANK ONE INSURANCE AGENCY, INC.
     a Wholly Owned Subsidiary of BANK ONE NA;
BANK ONE N.A. as Successor of the FIRST NATIONAL BANK OF CHICAGO
and;
AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO,

     Defendants.

---

### ORDER AND MEMORANDUM OF DECISION

---

This is a breach of fiduciary duty and breach of contract case.  Plaintiff and Counterclaim

Defendant Charles A. Micale, individually and as Settlor on behalf of the Charles A. Micale

Irrevocable Insurance Trusts for the benefits of his family members, and as trustee of the Charles

A. Micale Revocable Trust (collectively "Plaintiff")[1] alleges that Defendants and Counterclaim Plaintiffs, Bank One N.A. (Chicago), Bank One Trust Company, N.A., Banc One Investment Advisors Corporation, Banc One Securities Corporation, Banc One Insurance Agency, Inc., Bank One N.A. (Chicago) as successor of the First National Bank of Chicago, and American National Bank and Trust company of Chicago (collectively "Defendants") breached common law and statutory fiduciary duties, violated the Colorado Uniform Prudent Investor Act, failed to supervise, and breached the contracts between the parties.  This matter is before the court on (1) Defendants' "Motion for Judgment on the Pleadings," filed August 26, 2004; (2) "Defendants' Motion for Summary Judgment," filed November 19, 2004; and (3) "Defendants' Motion to Strike the Bad Faith and Sham Affidavit of Charles A. Micale," filed January 10, 2005. Jurisdiction is based on diversity of citizenship 28 U.S.C. § 1332 (2005).

## FACTS

*1.*     ***Factual Background***

Plaintiff's claims in this case arise out of two life insurance trusts and one investment account.  (Third Am. Compl. with Jury Demand ¶¶ 31–35 [filed 8/1/05] [hereinafter "Third Am. Compl."].)  I address the facts related to the two life insurance trusts first, then I address the facts related to the investment account.

---

[1] Charles Micale, individually, wears two hats in this litigation.  Thus, I refer to Charles Micale, as settlor, and Charles Micale as trustee collectively as Plaintiff.  I refer to Plaintiff as "he" when necessary.

a.      *The Irrevocable Life Insurance Trusts*

Plaintiff formed the "Charles A. Micale Irrevocable Life Insurance Trust" and the

"Charles A. Micale Spouses Irrevocable Life Insurance Trust" in December 1991.  (Br. in Supp.

of Defs.' Mot. for Summ. J., Statement of Undisputed Material Facts ¶ 1 [filed Nov. 19, 2004]

[hereinafter "Defs.' Br."]; *admitted at* Pl.'s Resp. to Defs.' Mot. for Summ. J., Resp. to

Statement of Undisputed Facts ¶ 1 [filed Dec. 9, 2004] [hereinafter "Pl.'s Resp."].)  Shortly

thereafter, Plaintiff funded the two trusts by purchasing two life insurance policies — one for

each trust.  (*Id.*, Statement of Undisputed Material Facts ¶ 2; *admitted at* Pl.'s Resp., Resp. to

Statement of Undisputed Facts ¶ 2.)  Massachusetts General Life Insurance Company,

subsequently Conseco Life Insurance Company, issued the two policies (the "Conseco policies")

insuring the life of Plaintiff.  (*Id.*)  Defendants were not involved in the formation of the trusts, or

in the selection or purchase of the Conseco policies.  (*Id.*, Statement of Undisputed Material

Facts ¶ 3; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 3.)

On May 9, 1995, Defendant American National Bank and Trust Company of Chicago, a

predecessor to Defendant Bank One, became a co-trustee of each trust.  (*Id.*, Statement of

Undisputed Material Facts ¶ 4; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts

¶ 4.)  Beginning in the mid-1990s, Defendants, its employees, and designees managed Plaintiff's

investments and advised Plaintiff with regard to estate planning, later acting as trustee in this

regard.  (Pl.'s Resp., Statement of Additional Disputed Facts ¶ 3; *disputed at* Defs.' Reply,

Resp. Concerning Disputed Facts ¶ 3.)  By 1995, it was apparent to the parties that the Conseco

policies required additional premium payments in order to perform as originally represented to

Plaintiff.  (*Id.*, Statement of Undisputed Material Facts ¶ 5; *deemed admitted at* Pl.'s Resp.,

Resp. to Statement of Undisputed Facts ¶ 5.)[2]

Plaintiff asserts that in 1999 Defendants represented to him that the policies would not

last a lifetime and would continue for another ten to twenty years without additional funding.

(Pl.'s Resp., Statement of Additional Disputed Facts ¶ 6; *disputed at* Defs.' Reply, Resp.

Concerning Additional Disputed Facts ¶ 6.)  Additionally, Plaintiff contends that Defendants, as

trustee, represented to Plaintiff, as settlor, that they could extend the period of potential lapse

from ten to twenty years to a longer period by borrowing against the policies and conservatively

investing the proceeds to pay the premiums over time.  (*Id.*, Statement of Additional Disputed

Facts ¶ 7; *disputed at* Defs.' Reply, Resp. Concerning Disputed Facts ¶ 7.)  In June 2000,

Defendants, acting on behalf of the trusts, took out loans from Conseco against the cash values of

---

[2]Plaintiff denies Defendant's proffered factual averment as to this point.  (Pl.'s Resp.,
Resp. to Statement of Undisputed Facts ¶ 5; Statement of Additional Disputed Facts ¶ 2.)  In
support, Plaintiff cites to his own affidavit.  (Pl.'s Resp., Ex. 1 ¶¶ 6, 7, 9 [Aff. of Pl.].)
Plaintiff's statements are refuted by overwhelming evidence in the record.  (Defs.' Reply Br. in
Supp. of Their Mot. for Summ. J., Reply Concerning Undisputed Facts ¶ 5 [filed Jan. 10, 2005]
[hereinafter "Defs.' Reply"].)  Specifically, Plaintiff was a party to at least three written
communications prior to 1995 indicating that these policies would not last throughout his lifetime
without additional premium payments.  (Defs.' Reply, Ex. A–8, 1 [12/9/92 Letter from Plaintiff
Re: Life Insurance Policies], Ex. A–8, 4 [12/14/93 Letter from Plaintiff Re: Life Insurance
Policies]; Ex. A–8, 5 [1/12/94 Letter from Insurer to Plaintiff Re: Life Insurance Policies].)  These
three letters show that Plaintiff's denial as to this point is patently false in light of the evidence.
I therefore disregard this particular averment by Plaintiff as a sham.

the Conseco policies.  (Defs.' Br., Statement of Undisputed Material Facts ¶ 6; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 6.)  The loan proceeds were invested in mutual funds, which were held in the trusts.  (*Id.*)  Between June 2000 and December 2003, the mutual fund investments, made with the proceeds of the loans against the Conseco policies, declined in value.  (*Id.*, Statement of Undisputed Material Facts ¶ 7; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 7.)

In August 2002, Defendants received final notice that the Conseco policies would lapse without further premium payments.  (*Id.*, Statement of Undisputed Material Facts ¶ 8; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 8.)  Upon receiving this notice, Defendants contacted Plaintiff to confirm this event.  (*Id.*)  Plaintiff did not advance additional premium payments to sustain the policies.  (*Id.*)  On September 1, 2002, the Conseco policies lapsed.  (*Id.*, Statement of Undisputed Material Facts ¶ 9; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 9.)

In 2003, Defendants decided to replace the Conseco policies and reimburse Plaintiff's trusts for the decline in value of the trust investments made with the proceeds from the loans on the lapsed Conseco policies.  (*Id.*, Statement of Undisputed Material Facts ¶ 10; *admitted in part at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 10.)[3]  At Plaintiff's request,

---

[3]Plaintiff denies Defendants' factual averment regarding reimbursement of the trusts. (Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 10.)  In support, Plaintiff relies on his own affidavit at paragraphs nine and twenty-six.  (*Id.*, Ex. 1 ¶¶ 9, 26.)  These paragraphs do not address, much less refute, Defendants' contention.  Further, the overwhelming evidence in the

Defendants investigated the possibility of reinstating the Conseco policies. (*Id.*, Statement of Undisputed Material Facts ¶ 11; *admitted in part at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 11.) Plaintiff contends that he wanted the Conseco policies reinstated. (Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 10.) In support, Plaintiff cites his own affidavit at paragraph twenty-three. (*Id.*, Ex. 1 ¶ 23 [Aff. of Pl.].) This denial is patently refuted by Plaintiff's own letter dated December 8, 2003, sixteen days before the new policies were purchased, wherein he states:

> I suggest in picking a carrier, one they should not pick is [C]onseco, since that would violate their fiduciary responsibility. I am sure they have convinced the Micale family by their actions and communications that [C]onseco is a very bad financial risk, [T]ravelers is an alternative, of course which they have been working with.

(Defs.' Br., Ex. A–1, 3 [12/8/03 Letter from Plaintiff].)

Defendants, in consultation with the co-trustee and Plaintiff, secured two new insurance policies for the trusts with The Travelers Life and Annuity Company ("Travelers"). (*Id.*, Statement of Undisputed Material Facts ¶ 12; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 12.) The two Travelers policies provide for the same amount of death benefit coverage — $2,000,000 per policy — as provided by the Conseco policies. (*Id.*,

---

record suggests that Plaintiff's purported denial is conclusively refuted by the evidence. Plaintiff had knowledge that Defendants planned to replace the Conseco policies with Travelers policies and encouraged such action. (Defs.' Reply, Ex. A–9, 10 [10/23/03 Letter to Plaintiff Re: new policies]; [10/27/03 Letter from Plaintiff Re: new policies], Defs.' Br., Ex. A–1, 3 [12/8/03 Letter from Plaintiff].)

Statement of Undisputed Material Facts ¶ 13; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 13.)  Unlike the Conseco policies, Travelers guaranteed the death benefit in its policies.  (*Id.*, Statement of Undisputed Material Facts ¶ 14; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 14.)  In other words, as long as the insured paid the annual premiums, Travelers would pay the death benefit in full.  (*Id.*)  By contrast, the Conseco policies would terminate when Plaintiff reached the age of seventy-seven, irrespective of whether the premiums were paid.  (*Id.*)  The annual premiums for the Travelers policies total $55,137, which is $7,827 less than the premiums for each Conseco policy would have been if there was never a loan out on the Conseco policies and those policies had never lapsed.  (*Id.*, Statement of Undisputed Material Facts ¶ 15; Defs.' Reply, Resp. Concerning Undisputed Facts ¶ 17; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 15; Statement of Additional Disputed Facts ¶ 17.)

Defendants contend that they replaced the cash values in each trust to the same amount it would be if the Conseco policies were still in force and Defendants never took loans against the Conseco policies or made the subsequent investments.  (*Id.*, Statement of Undisputed Material Facts ¶ 16; *denied at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 16.)  Plaintiff asserts that "[i]n 2003, the bank replaced the lapsed policies but now refuses to fund them for the same time period they had represented to me they would last, had they not borrowed against the policy and allowed the policies to lapse."  (Pl.'s Resp., Ex. 1 ¶ 27 [Aff. of Pl.].)

Travelers is a more highly rated and financially stable insurance carrier than Conseco. (Defs.' Br., Statement of Undisputed Material Facts ¶ 17; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 17.)  Defendants paid the first year's premium on the two Travelers policies, but did not agree to pay the annual premiums on these policies after the first year. (*Id.*, Statement of Undisputed Material Facts ¶ 18; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 18.)  Plaintiff informed Defendants that he would refuse to pay the annual premiums necessary to maintain the Travelers policies.  (*Id.*, Statement of Undisputed Material Facts ¶ 19; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 19.)

    **b.**    ***Plaintiff's Investment Account***

On July 3, 1995, Plaintiff entered into a "Personal Investment Management Account Agreement" with Defendants for the management of his investment account.  (Answer to Second Am. Compl. and Counterclaim [filed Jan. 20, 2005] [hereinafter "Answer to Second Am. Compl."], Ex. C–1 [Personal Investment Management Account].)  On March 16, 1998, Plaintiff transferred this account to the Charles A. Micale Trust and entered into a new agreement with Defendants reflecting this change.  (Defs.' Br., Statement of Undisputed Material Facts ¶ 21; *admitted in relevant part at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 21.)  When the account was opened in 1995, Plaintiff was aware that Defendants' proposed model portfolio included only stocks or equities.  (*Id.*, Statement of Undisputed Material Facts ¶ 22; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 22.)  Plaintiff received monthly and

quarterly statements reflecting the performance of the account and the fact that, until 2002, the

account was invested only in equities.  (*Id.*, Statement of Undisputed Material Facts ¶ 23; *at*

Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 23.)  Plaintiff testified that he knew about

the mismanagement of the investment account prior to February 17, 2001:

> Q.   You said you talked to Mr. Rosemeyer often.  How often did you talk to him?
> A.   Oh, I don't know.
> Q.   A few times a week?
> A.   Sometimes not at all in a week and sometimes a lot.  In the years — 2000 or the
>      middle of the year on, when the accounts started to drop, I talked to him daily
>      sometimes, and I told him I wasn't sleeping, they had to do something, they had
>      to make corrections.  Sometimes I called him twice in a day.
> Q.   How about in 1999, how often did you talk to Bill Rosemeyer in 1999?
> * * *
> A.   I know it was a lot after . . . In mid-2000, . . . I talked to Rosemeyer many times
>      and told him, you know, "I can't work with you, you know.  I'll call you, see
>      how things are doing, but you've got to protect me on this account."

(*Id.*, Ex. A–3 at 146–47 [Dep. of Pl. Micale].)  On January 17, 2001, Plaintiff sent an article to

Mr. Rosemeyer "to give [Rosemeyer] an idea that you shouldn't be in [twenty] stocks or

[thirty] stocks."  (*Id.*, Ex. A–3 at 239–40, 245 [Dep. of Pl. Micale].)  Plaintiff "agree[d] with the

article that [his equity investments] were not diversified," and he "disagreed with the

concentration" of his stocks and was upset that "the bank did nothing about it."  (*Id.*)  Plaintiff

sent Defendants an allocation memorandum in 2001, which Defendants eventually implemented.

(Defs.' Reply, Ex. A–11 at 253–54 [Dep. of Pl.].)  Plaintiff's memorandum stated, "here's the

allocation . . . almost the same as I sent in 2001, that I think you ought to follow, because they

asked for my input on the book."  (*Id.*)  Plaintiff asserts that Defendants mismanaged his account

because there was significant loss associated with stock diversification.  (Pl.'s Resp. at 23, Ex. 1

¶ 28 [Aff. of Pl.].)

**2.**     *Procedural History*

Plaintiff filed his initial complaint in this court on February 18, 2004.  (Compl. and Jury

Demand [filed Feb. 17, 2004] [hereinafter "Compl."].)  Plaintiff asserted claims for (1) violation

of common law fiduciary duty, (2) violation of the Colorado Uniform Fiduciaries Law, (3)

violation of Colorado Uniform Prudent Investor Act, (4) negligent failure to train, monitor, and

supervise, and (5) bad faith breach of insurance contract.  (*Id.* ¶¶ 32–51.)  Plaintiff named the

following Defendants: (1) Bank One N.A, (2) Banc One Investment Advisors Corporation, (3)

Bank One Insurance Agency, Inc., (4) Bank One N.A., as successor of the First National Bank of

Chicago, (5) American National Bank and Trust Company of Chicago, (6) William Rosemeyer,

and (7) Pat Edwards.  (*Id.*)  On April 26, 2004, Defendants filed their answer to Plaintiff's

complaint.  (Defs.' Answer [filed Apr. 26, 2004].)

On May 26, 2004, Plaintiff filed his first amended complaint.  (First Am. Compl. and

Jury Demand [filed May 26, 2004].)  In addition to the claims Plaintiff asserted in his initial

complaint, Plaintiff added a claim for breach of contract.  (*Id.* ¶¶ 52–56.)  On June 15, 2004,

Defendants filed their answer and asserted a counterclaim for declaratory relief.  (Answer to First

Am. Compl. ¶¶ 30–34 [filed 6/15/04].)  On July 26, 2004, the parties stipulated to the dismissal

of Defendant William Rosemeyer.  (Notice of Dismissal of William Rosemeyer [filed July 26,

2004].)  On August 13, 2004, Plaintiff filed his reply to Defendants' counterclaim.  (Reply to

Defs.' Countercl. [filed Aug. 13, 2004].)

On August 26, 2004, Defendants filed a motion for judgment on the pleadings.  (Defs.'

Mot. for J. on the Pleadings [filed Aug. 26, 2004] [hereinafter "Defs.' Mot. for J. on

Pleadings"].)  Defendants argue that Plaintiff's claims for breach of fiduciary duty and negligence,

as those claims pertain to the investment accounts, are barred by the economic loss rule.  (*Id.* at

10.)  Further, Defendants contend that Plaintiff fails to state a claim under the  Colorado Uniform

Fiduciaries Law or the Colorado Uniform Prudent Investor Act.  (*Id.* at 10–16.)  Finally,

Defendants allege that Plaintiff fails to state a claim for bad faith breach of insurance contract.

(*Id.* at 16–17.)  On September 17, 2004, Plaintiff filed his response to Defendants' motion for

judgement on the pleadings.  (Pl.'s Resp. in Opp'n to Defs.' Mot. for J. on the Pleadings [filed

Sept. 17, 2004] [hereinafter "Pl.'s Resp. to Defs.' Mot. for J. on Pleadings"].)  On October 5,

2004, Defendants filed their reply in support of their motion for judgement on the pleadings.

(Defs.' Reply Br. in Supp. of Their Mot. for J. on the Pleadings [filed Oct. 5, 2004] [hereinafter

"Defs.' Reply to Mot. for J. on Pleadings"].)  This matter is fully briefed.  On November 12,

2004, the parties stipulated to the dismissal of Defendant Pat Edwards.  (Notice of Dismissal of

Pat Edwards [filed Nov. 12, 2004].)

On November 19, 2004, Defendants filed their motion for summary judgment.  (Defs.'

Br.)  Defendants argue that they are entitled to summary judgment (1) with respect to all

-11-

Plaintiff's claims directed at the trusts because Plaintiff cannot prove damages, (*id.* at 7.), (2) on their counterclaim for declaratory relief, (*id.* at 12.), and (3) with respect to Plaintiff's claims for damages related to breach of contract on the investment account incurred more than three years before Plaintiff filed his complaint. (*Id.* at 14–18.) On December 9, 2004, Plaintiff filed his response to Defendants' motion for summary judgment. (Pl.'s Resp.) Defendants filed their reply on January 10, 2005. (Defs.' Reply.) This matter is fully briefed.

On January 5, 2005, Plaintiff filed his second amended complaint and jury demand. (Second Am. Compl. and Jury Demand [filed Jan. 5, 2005].) Plaintiff withdrew his claim for bad faith breach of insurance contract and added a claim for exemplary damages. (*Id.* ¶¶ 48, 54–55.) On January 20, 2005, Defendants' filed their answer and counterclaim to Plaintiff's second amended complaint. (Answer to Second Am. Compl.)

On January 7, 2005, Defendants filed an objection to the magistrate judge's decision regarding Plaintiff's motion to amend/correct his complaint to add a claim for exemplary damages. (Defs.' Rule 72 Objections [filed Jan. 7, 2005].) On January 26, 2005, Plaintiff filed his response to Defendants' Rule 72 objections. (Pl.'s Resp. to Defs.' Rule 72 Objections to Magistrate's Ruling Regarding Motion to Amend to Add Exemplary Damages Claim for Relief [filed Jan. 26, 2005].) Defendants have not filed a reply.

On January 10, 2005, Defendants filed a motion to strike the "bad faith and sham affidavit" of Plaintiff. (Defs.' Mot. to Strike the Bad Faith and Sham Aff. of Charles A. Micale

[filed Jan. 10, 2005].)  Defendants argue that Plaintiff's affidavit attached to his response to

Defendants' motion for summary judgment is materially false and misleading in light of the

evidence.  (*Id.* at 3.)  On January 28, 2005, Plaintiff filed his response to Defendants' motion to

strike the affidavit of Plaintiff.  (Plaintiff Micale's Resp. to Defs.' Mot. to Strike Bad Faith and

Sham Aff. of Charles A. Micale [filed Jan. 28, 2005].)  On February 15, 2005, Defendants filed

their reply in support of the motion to strike Plaintiff's affidavit.  (Defs.' Reply Br. in Supp. of

Mot. to Strike the Bad Faith and Sham Aff. of Charles A. Micale [filed Feb. 15, 2005].)  This

matter is fully briefed.

On August 1, 2005, Plaintiff filed a third amended complaint with jury demand against all

Defendants.  (Third Am. Compl.)  Plaintiff's complaint adds Defendants Bank One Trust

Company, N.A. and Banc One Securities Corporation.[4]  (*Id.*)

## ANALYSIS

*1.*      ***Standard of Review***

This Order and Memorandum of Decision evaluates Plaintiff's claims pursuant to Rules

56(c) and 12(c) of the Federal Rules of Civil Procedure.  Pursuant to Rule 56(c) of the Federal

---

[4]On August 8, 2005, Defendants Bank One Trust Company, N.A. and Banc One
Securities Corporation filed a joinder in the pending motions.  (Def. Bank One Trust Company's
Joinder in Pending Mots. [filed 8/8/05]; Def. Banc One Securities Corporation's Joinder in
Pending Mots. [filed 8/8/05].)  Specifically, these two Defendants joined in the motion for
judgment on the pleadings, motion for summary judgment, and motion to strike the "bad faith
and sham affidavit" of Plaintiff.  (*Id.*)  Thus, my rulings in this Order and Memorandum of
Decision are applicable to these two Defendants.

Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2005); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Celotex Corp.*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "'Only disputes over facts that might affect the outcome of the suit under governing law will preclude the entry of summary judgment.'" *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998) (quoting *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record must be viewed in the light most favorable to the nonmoving party. *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 [10th Cir. 1990]).

Rule 12(c) of the Federal Rules of Civil Procedure states that:

> After the pleadings are closed but within such time as not to delay
> the trial, any party may move for judgment on the pleadings.  If,
> on a motion for judgment on the pleadings, matters outside the
> pleadings are presented to and not excluded by the court, the
> motion shall be treated as one for summary judgment and disposed
> of as provided in Rule 56, and all parties shall be given reasonable
> opportunity to present all material made pertinent to such a
> motion by Rule 56.

Fed. R. Civ. P. 12(c) (2005).  A motion for judgment on the pleadings under Rule 12(c) is treated

as a motion to dismiss under Rule 12(b)(6).  *Atl. Richfield Co. v. Farm Credit Bank of Wichita*,

226 F.3d 1138, 1160 (10th Cir. 2000).  Under this standard, the court must accept all the well-

pleaded allegations of the complaint as true and construe them in the light most favorable to the

non-moving party.  *Realmonte v. Reeves*, 169 F.3d 1280, 1283 (10th Cir. 1999).  The defendant

can succeed only "when it appears that the plaintiff can prove not set of facts in support of the

claims that would entitled the plaintiff to relief."  *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522,

528 (10th Cir. 1992).  The determination of a Rule 12(c) motion is confined to the pleadings and

to any documents attached as exhibits to the pleadings, including the defendant's answer.

*Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001).

**2.**     ***Evaluation of Claims***

Plaintiff asserts claims for (1) violation of common law fiduciary duty, (Third Am.

Compl. ¶¶ 36–39), (2) violations of the Colorado Uniform Fiduciaries Law, (*id.* ¶¶ 36–39), (3)

violations of the Colorado Uniform Prudent Investor Act, (*id.* ¶¶ 44–47), (4) negligent failure to

-15-

train, monitor, and supervise, (*id.* ¶¶ 48–51), and (5) breach of contract. (*Id.* ¶¶ 53–57.) Plaintiff asserts each of these claims with respect to the trusts and the investment accounts. Defendants assert that they are entitled to judgment on the pleadings with respect to Plaintiff's claims for (1) violations of the Colorado Uniform Fiduciaries Law, (2) violations of the Colorado Prudent Investor Act, and (3) breach of fiduciary duty and negligence with respect to the investment accounts. (Defs.' Mot. for J. on Pleadings at 10–17.) Defendants contend that they are entitled to summary judgment on (1) all of Plaintiff's tort claims with respect to the trust accounts, (2) all of Plaintiff's claims for damages that occurred prior to February 1, 2001, with respect to the investment account, and (3) Defendants' counterclaim for declaratory relief. (Defs.' Br. at 7–18.) I evaluate Plaintiff's and Defendants' claims for relief below, but I do not follow the order the parties raised these claims.

### a.    *Colorado Uniform Fiduciaries Law*

Plaintiff's second claim for relief is styled as "violations of the Colorado Uniform Fiduciaries Law — C.R.S. §§ 15–1–101." (Third Am. Comp. ¶¶ 40–43.) Defendants contend that Plaintiff has failed to state a claim under the Colorado Uniform Fiduciaries Law ("Colorado UFL") because (1) the Colorado UFL does not provide for an independent cause of action; and (2) even if an independent cause of action exists, Plaintiff misinterprets the purpose of the statute and Plaintiff does not state a claim under the Colorado UFL. (Defs.' Mot. For J. on

Pleadings at 10–12.)[5]  The Colorado Uniform Fiduciaries Law ("Colorado UFL") is modeled after

the Uniform Fiduciaries Law ("UFL").  C.R.S. §§ 15–1–101 to 13; *see also In re Lauer*, 98 F.3d

378, 382 (8th Cir. 1996).

From the outset I note that it is not clear that Colorado recognizes an independent cause

of action under the Colorado UFL.  There are some jurisdictions that do not recognize an

independent cause of action under the UFL.  *See Appley v. West*, 832 F.2d 1021, 1031 (7th Cir.

1987) (under Illinois law, UFL does not create a cause of action, but rather is a defense to

common-law causes of action).  The Colorado courts that have addressed this statute treat it as a

defense to a common law cause of action.  *See Commercial Sav. Bank v. Baum*, 327 P.2d 743,

745 (Colo. 1958) (reversing judgment for breach of fiduciary obligations based on UFL defense);

*see also Wysowatcky v. Denver-Willsys, Inc.*, 281 P.2d 165, 167 (Colo. 1955) (affirming dismissal

of claim for breach of fiduciary duty based on UFL defense); *Kaneco Oil & Gas, Ltd., II v. Univ.

Nat'l Bank*, 732 P.2d 247, 248–49 (Colo. App. 1986) (recognizing UFL as a defense to causes of

action for negligence and breach of fiduciary duty); *Arvada Hardwood Floor Co. v. James*, 638

P.2d 828, 830 (Colo. App. 1981) (UFL defense inapplicable to facts that do not fit purpose of

the act).  I do not need to determine whether Colorado recognizes an independent cause of action,

---

[5]From the outset, I note that the operative pleading in this case is the third amended complaint.  (Third Am. Compl.)  Defendants' motion for judgment on the pleadings is directed at the first amended complaint.  (Defs.' Mot. for J. on Pleadings.)  The two complaints are identical for all intents and purposes as they relate to Defendants' motion for judgment on the pleadings.  Thus, I evaluate Defendants' arguments as set forth in their motion for judgment on the pleadings with respect to Plaintiff's third amended complaint.

because even if such independent cause of action exists, Plaintiff's complaint does not state a claim upon which relief can be granted. Thus, the following analysis assumes, *arguendo*, that such a claim for relief exists.

The Colorado UFL generally governs the liability of a bank to a third party for its dealings with that third party's fiduciary. *See Mancuso v. United Bank of Pueblo*, 818 P.2d 732, 740 n. 8 (Colo. 1991) (noting bank's liability for specific fiduciary's breach of trust depends on the bank's knowledge of the transfer of the instrument); *see also Western Casualty and Sur. Co. v. First State Bank of Bonne Terre*, 390 S.W.2d 913 (Mo. App. 1965) (bank liable when it knew that guardian borrowed funds and pledged ward's asset as security). The Tenth Circuit in evaluating a defense provided by standards of liability in the Colorado UFL, described the purpose of the Colorado UFL as follows:

> The great volume of the commercial transactions of the country requires the use of checks, drafts, and *similar instruments;* a large part of them must be drawn or negotiated by fiduciaries or agents; they must pass through banks all over the country. Uniform and definite rules were found necessary to take the place of diverse and conflicting rules that had grown up concerning constructive notice of breach of fiduciary obligations in order that commerce might proceed with as little hindrance as possible, and, at the same time, that loss for breach of such obligation should fall on the party directly responsible for the faithless agent and not on one who was a mere conduit to transmit the fund; this necessity led to the enactment of the Uniform Fiduciaries Act.

*Richards v. Platte Valley Bank*, 866 F.2d 1576, 1581 (10th Cir. 1989) (emphasis in original) (quoting *Union Bank & Trust Co. v. Girard Trust Co.*, 161 A. 865, 870 [Pa. 1923]). This act was adopted for the purpose of harmonizing the common law theory, that one deals with a

fiduciary at his peril, with the provisions of the uniform negotiable instruments act. *Wysowatcky*, 281 P.2d at 167. Thus, the uniform fiduciaries act "'relaxes some of the harsher rules which require of a bank and of individuals the highest degree of vigilance in the detection of a fiduciary's wrongdoing.'" *Id.* (quoting *Colby v. Riggs Nat'l Bank*, 92 F.2d 183, 198 [D.C. Cir. 1937].)

The Eighth circuit promulgated the elements of a cause of action under the UFL, after evaluating the purposes of the UFL in a similar manner as the Tenth Circuit in *Richards*. *In re Lauer*, 98 F.3d 378, 382–83 (8th Cir. 1996). Specifically, in order to impose liability under the UFL, the plaintiff must show that: (1) the defendant dealt with one who was a fiduciary; (2) the fiduciary breached his fiduciary duty; and (3) the defendant had either actual knowledge of the breach or knew sufficient facts to amount to bad faith. *Id.*

The facts, as alleged by Plaintiff in his complaint, do not demonstrate a cause of action under the elements described above. Here, Plaintiff seeks to hold Defendants liable for their *own* alleged breaches of fiduciary duty as trustee of Plaintiff's life insurance trusts and investment accounts. Plaintiff's complaint simply states "[t]he Defendants owed the Plaintiff[] fiduciary duties under the Colorado Uniform Fiduciaries Law. The Defendants breached their duties to the Plaintiff[] as required by the Colorado Uniform Fiduciary Laws." (Third Am. Compl. ¶¶ 40–42.) Assuming the UFL grants an individual right of action, Plaintiff has not asserted any facts that Defendant dealt with a fiduciary who in turn breached its fiduciary duty. Further, Plaintiff's complaint demonstrates Plaintiff's lack of understanding behind the purposes of the

Colorado UFL.  The facts of this case are inapposite to any possible cause of action under the

Colorado UFL.  *See Arvada Hardwood Floor*, 638 P.2d at 830.  Thus, Plaintiff has failed to state

a claim for violation of the Colorado UFL.

Plaintiff's sole argument to the contrary is that "as co-trustee of the irrevocable insurance

trust account, the Defendants are a fiduciary subject to the statutory requirements of the

Fiduciaries Act." (Pl.'s Resp. to Defs.' Mot. For J. on Pleadings at 22.)  Plaintiff contends

section 15–1–304 "expressly states that fiduciaries are obligated to invest the assets entrusted to

their care as a prudent person would." (*Id.*)  Plaintiff does not offer any other argument in

support of his Colorado UFL claim.  Plaintiff does not address the purpose of the statute nor the

elements necessary to establish such a claim.  Accordingly, Plaintiff's recitation of the Colorado

UFL is insufficient to withstand Defendants' motion for judgment on the pleadings as to

Plaintiff's Colorado UFL claim.

### b.      *Colorado Uniform Prudent Investor Act*

Plaintiff's third claim for relief is styled as "Violations of the Colorado Uniform Prudent

Investor Act — C.R.S. §§ 15–1.1–101." (Third Am. Compl. ¶¶ 44–47.)  Defendants assert that

they are entitled to judgment on the pleadings with respect to this claim because the Colorado

Prudent Investor Act ("Colorado PIA") does not provide an independent cause of action. (Defs.'

Mot. For J. on Pleadings at 13.)

Colorado adopted the Uniform Prudent Investor Act ("UPIA") in 1995.  *See* C.R.S. §§ 15–1.1–101.  The UPIA has been adopted in thirty-seven states.  *See Diversification Under the Uniform Prudent Investor Act*, 32 Colo. Lawyer 87, 89 (Nov. 2003).  The UPIA is modeled on the Prudent Investor Rule ("PIR"), as described in the Restatement (Third) of Trusts.  *Id.*  The PIR is a default rule which may be expanded, restricted, eliminated, or otherwise altered by the provisions of a trust.  *See* C.R.S. §§ 15–1.1–101(b).  In enumerating the objectives of the UPIA, the drafters describe the UPIA as the "replacement" for the PIR.  *Id.*  The UPIA essentially compliments and codifies the common law.  C.R.S. § 15–1.1–101 official cmt., objectives (2004); *Wood v. U.S. Bank, N.A.*, 828 N.E.2d 1072, 1077 (Ohio Ct. App. 2005) (the UPIA codifies the common law).  As such, it provides a legal standard of care, not an independent cause of action. *Mellon Bank, N.A. v. United States*, 265 F.3d 1275, 1280 (Fed. Cir. 2001) (recognizing that the UPIA subjects trustees to a prudent person standard); *Goodwine v. Goodwine*, 819 N.E. 2d 824, 831 (Ind. App. 2004) (noting that the UPIA sets forth a standard of care for trustees).

Colorado does not have a single case on record that evaluates the Colorado PIA as an independent cause of action.  Moreover, there is only one published opinion in the country in which a court considered a claim under the UPIA as an independent cause of action.  *See New Haven Sav. Bank v. LaPlace*, 783 A.2d 1174, 1177 (Conn. App. 2001) (in dismissing the defendant's claim the court noted a lack of supporting "case law from any jurisdiction"); *see also Stuart v. Stuart*, No. X08CV01930315, 2005 Conn. Super. WL 532151, at *2 (Conn. Super. Jan.

28, 2005) (allowing a claim under the Connecticut UPIA). Despite the lack of case law suggesting that the UPIA offers an independent cause of action, I still evaluate whether the Colorado PIA might provide an independent cause of action.

"Whenever a claimant alleges that a statute, ordinance, or regulation implicitly creates a private right of action, the critical question is whether the legislature intended such a result." *Gerrity Oil & Gas Corp., v. Magness*, 946 P.2d 913, 923 (Colo. 1997). Thus, Colorado courts do not imply a private right of action based on a statutory violation "unless we discern a clear legislative intent to create such a cause of action." *Id.* The court should consider three factors in an effort to determine if a particular plaintiff has an independent cause of action: (1) whether the plaintiff is within the class of persons intended to be benefitted by the legislative enactment; (2) whether the legislature intended to create, albeit implicitly, a private right of action; and (3) whether an implied civil remedy would be consistent with purposes of the legislative scheme. *Id.* (citing *Allstate Ins. Co. v. Parfrey*, 830 P.2d 905, 91 [Colo. 1992]). Further, when the statutory language indicates that the legislature considered "the issue of remedies for violations of the statute or regulations issued thereunder, and chose not to include a private remedy in damages, we will not infer such a remedy." *Id.* at 925.

Here, even assuming Plaintiff can establish that he is in the class of people intended to benefit from the statute, there is no evidence that the legislative body intended to create an independent right of action. In fact, the official comment states that "[t]his Act does not

undertake to address issues of remedy law or the computation of damages in trust matters.

Remedies are the subject of a reasonably distinct body of doctrine." C.R.S. § 15–1.1–101 official

cmt., remedies (2004). Thus, this passage is evidence that the general assembly considered the

issue of remedies and chose not to include an independent right of action in the Colorado PIA.

Plaintiff contends that "an implied private right of action must be recognized under the

[UPIA] . . . because it is the only way of enforcing the statutory duties imposed upon trustees in

investing and managing assets." (Pl.'s Resp. to Defs.' Mot. For J. on Pleadings at 24.)

Plaintiff's argument is not persuasive. Plaintiff can enforce his rights against the trustees through

common law claim such as breach of fiduciary duty and breach of contract. Thus, Plaintiff's

conclusory allegation, as to this point, is unavailing, and Plaintiff's third claim for relief is

dismissed as a matter of law.

> **c.**     ***Plaintiff's Fiduciary Duty and Negligence Claims With Respect to the Investment Accounts***

Plaintiff asserts claims for: (1) violation of common law fiduciary duty, (Third Am.

Compl. ¶¶ 36–39); and (2) negligent failure to train, monitor, and supervise. (*Id.* ¶¶ 49–52)

Defendants allege that they are entitled to judgment on the pleadings as to each of these claims

with respect to the investment accounts. (Defs.' Mot. for J. on Pleadings at 2, 6–10.)

Defendants contend that the investment account relationship between the parties was governed

by a written contract and thus, the tort claims are barred by the economic loss rule. (Defs.' Mot.

for J. on Pleadings at 6.)

In general, the economic loss rule provides that:

> no cause of action lies in tort when purely economic damage is caused by negligent breach of a contractual duty. This economic loss rule prevents recovery for negligence when the duty breached is a contractual duty and the harm incurred is the result of failure of the purpose of the contract.

*Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1261 (Colo. 2000) (quoting *Jardel Enter., Inc. v. Triconsultants, Inc.*, 770 P.2d 1301, 1303 [Colo. App. 1988]). The economic loss rule serves to maintain a distinction between a tort obligation and a contract obligation. *Town of Alma*, 10 P.3d at 1262. The pivotal distinction between a contract and tort obligation is the source of the respective parties' duties. *Id.* A breach of duty arising independently of any contract duties may support a tort action. *Id.* "The duty asserted by the parties alleging negligence [must arise] from an independent duty of care recognized under the common law *but not contemplated under the terms of the contract.*" *Grynberg v. Agri Tech, Inc.*, 985 P.2d 59, 62 (Colo. App. 1999) (emphasis added). Cases involving torts that are expressly designed to remedy pure economic loss, such as breach of fiduciary duty, create substantial confusion with respect to the economic loss rule. *Town of Alma,* 10 P.3d at 1263.

Defendants argue that they are entitled to judgment on the pleadings because, as pled, Plaintiff's tort claims with respect to the investment account is barred by the economic loss rule. (Defs.' Mot. for J. on Pleadings at 8.) Plaintiff argues that because Colorado tort law imposes professional and fiduciary duties of care on financial advisors/brokers under appropriate circumstances, independently of any duties under the contract, he is entitled to maintain an action

for breach of contract and breach of fiduciary duty.  (Pl.'s Resp to Defs.' Mot. for J. on

Pleadings 13–15.)  As a preliminary matter, Plaintiff must establish an independent duty.  The

parties dispute whether Defendants owed Plaintiff a fiduciary duty in this case with respect to

the investment accounts.  (Defs.' Mot. for J. on Pleadings at 7 n. 6; Pl.'s Resp. to Defs.' Mot.

for J. on Pleadings at 7–15.)  The parties agree, however, that "unless excluded by the terms of

the agreement, this is a fact-intensive inquiry inappropriate for resolution at this stage."  (Pl.'s

Resp. to Defs.' Mot. for J. on Pleadings at 15 n. 6; *quoting* Defs.' Mot. for J. on Pleadings at 7 n.

6.)  Thus, I do not make any determination regarding whether a fiduciary duty exists between the

parties in this case.

> Despite this, Defendants contend that:
>
> [e]ven if Plaintiff could otherwise establish a fiduciary relationship between
> himself and Defendants . . . with respect to the investment accounts, it does not
> matter because the contracts between Plaintiff and [Defendants] govern the nature
> and scope of the duties and obligations owed by [Defendants] to Plaintiff, and the
> appropriate standards of care alleged to have been breached by Defendants are
> subsumed within the parties' contracts.

(Defs.' Mot. for J. on Pleadings at 7.)  Specifically, Defendants assert that the allegations upon

which Plaintiff bases his tort claims encompass precisely the same duties and obligations on

behalf of Defendants as the breach of contract claim.  (*Id.*)  Plaintiff's complaint sets forth a list

of alleged wrongful acts related to the investment accounts upon which he bases his breach of

contract and tort claims.  (Third Am. Compl. ¶¶ 32[a–r].)  These allegations include, but are not

limited to, the fact that Defendants (1) "willfully and in bad faith permitted [Plaintiff's]

investment account to steadily decline in value without taking prudent action to protect

Plaintiff['s] assets," (*id.* ¶ 32[c]), "breached its . . . duty to use reasonable care and skill to make

the . . . investment account productive," (*id.* ¶ 32[d]), "fail[ed] to exercise proper judgment . . . in

the management of the trust property," (*id.* ¶ 32[f]), "breached it [sic] duty of loyalty to invest

and manage the trust assets solely in the interest of the beneficiaries," (*id.* ¶ 32[j]), "breached its

fiduciary duty in acquiring, investing, and managing property for the benefit of others." (*Id.* ¶

32[l].)  The final paragraph of this laundry list of allegations states, "[Defendants] breached

[their] obligations and duties under the [contract] by engaging in the wrongful acts itemized

above." (*Id.* ¶ 32[r].)

Accepting the allegations in the complaint as true, as I must, the contract between the

parties encompasses precisely the same duties and obligations on behalf of Defendants as

Plaintiff alleges as the basis of his tort claims.  As pled, Plaintiff admittedly basis his tort and

contract claims on the same duties and obligations.  (Third Am. Compl. ¶ 32[r].)  Further, the

contract requires Defendants to take into account the "best interests" of Plaintiff.  (Defs.' Mot.

for J. on Pleadings, Ex. C–1 at 1 [Personal Investment Management Account Agreement].)  The

contract requires that Defendants act in "good faith" and refrain from "willful misconduct." (*Id.*,

Ex. C–1 at 2 ¶ 10 [Personal Investment Management Account Agreement].)  Finally, the

Investment Advisory Account Agreement requires Defendants to "exercise . . . due care." (*Id.*,

Ex. C–4 at 1 [Investment Advisory Account Agreement].)

Here, assuming a fiduciary duty exists between the parties as a basis for Plaintiff's tort claims, it does not arise "from an independent duty of care recognized under the common law *but not contemplated under the terms of the contract*." *See Grynberg v. Agri Tech, Inc.*, 985 P.2d 59, 62 (Colo. App. 1999) (emphasis added). Accepting the allegations in Plaintiff's complaint as true, the nature of the obligations under the contract are the same as, or subsume the duties of care imposed by the common law. Plaintiff's complaint alleges that the duties Defendants allegedly tortiously breached are the same duties Plaintiff claims Defendants breached under the contract. (Third Am. Compl. ¶ 32[r].) Thus, Defendants did not owe Plaintiff an independent duty because by Plaintiff's admission, the parties "contemplated [it] under the terms of the contract." *See Grynberg*, 985 P.2d at 62.

This case is analogous to *Tuchman v. Pell Rudman Trust Co.*, 245 F. Supp. 2d 1156, 1159–60 (D. Colo. 2003). In *Tuchman*, the district court, in evaluating Colorado law, determined that a plaintiff-investor's tort claims could not be maintained if the duties the investment advisor had allegedly breached were covered by the parties' investment account agreements. *Id.* The court determined that the economic loss rule applied to bar the plaintiff's claims "because the professional and fiduciary duties asserted by [the plaintiff] in the instant case are precisely the same as those he alleges were contemplated under the terms of the parties' contractual agreements, he cannot maintain both breach of contract and tort claims for their breach." *Tuchman*, 245 F.Supp.2d at 1160. The court in *Tuchman* looked to the complaint and

determined that "it appears from Plaintiff's allegations that the duties allegedly tortiously breached by [defendant] are precisely the same express and implied duties [p]laintiff claims [defendant] assumed upon entering into the [contract]." *Id.* at 1159. The facts in this case are analogous. As stated above, the allegations in Plaintiff's complaint indicate that the duties allegedly tortiously breached by Defendants are the same duties allegedly breached under the contract. (Third Am. Compl. ¶ 32[r].) Plaintiff specifically pled that "[Defendants] breached [their] obligations and duties under the Agency Agreements by engaging in the wrongful acts itemized above." (*Id.*) In addition, the duties of the parties as contemplated under the contract, are the same as those Plaintiff alleges as support for his tort claims as they relate to the investment accounts.

Plaintiff contends that the Colorado Supreme Court's decision in *Colorado Homes Ltd. v. Loerch-Wilson*, 43 P.3d 178, 721 (Colo. App. 2001), is controlling here. (Pl.'s Resp. to Defs.' Mot. for J. on Pleadings at 14.) The court in *Colorado Homes*, determined that a "special relationship" exists between homeowners and homeowners' associations such that an independent duty of care supports a tort action even though the parties also have a contractual relationship. *Colorado Homes*, 43 P.3d at 721–22. "[T]he Colorado courts have recognized that some special relationships, such as attorney-client, physician-patient, and insured-insurer, by their nature automatically trigger an independent duty of care that supports a tort action even when the parties also have a contractual relationship." *Logizz Automation, Inc. v. Lawrence*

*Michels Family Trust*, 56 P.3d 1224, 1232 (Colo. App. 2001). The court in *Colorado Homes*

determined that the duty in that case was one of those "special relationships." *Colorado Homes*,

43 P.3d at 721–22. Colorado courts have declined to recognize a financial advisor relationship as

a "special relationship" that is exempt from the economic loss rule. *See Grynberg v. Agri Tech.,*

*Inc.*, 10 P.3d 1267, 1270 (Colo. 2000) (finding no exception to the economic loss rule for

"common law duty to design and implement the [plaintiffs'] investment program with the

relevant standard of care."); *see generally Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718

P.2d 508, 517 (Colo. 1986) (declining to adopt a rule that a "stockbroker/customer relationship

is, *per se*, fiduciary in nature). Accordingly, Plaintiff's argument in reliance on *Colorado Homes*,

and the *per se* fiduciary nature of a financial advisor relationship is unavailing.

Additionally, Plaintiff contends that "[t]he application of the economic loss rule here is

preempted by federal law under the Supremacy Clause of the United States Constitution." (Pl.'s

Resp. to Mot. for J. on Pleadings at 19.) Plaintiff fails to identify a specific federal law that

preempts the Colorado economic loss rule. (*Id.* at 19–22.) Plaintiff repeatedly argues in his

response to Defendants' motion for judgement on the pleadings that "Colorado's economic loss

rule is preempted in several ways to the extent it would vitiate a federally imposed fiduciary on a

nationally chartered bank." (*Id.* at 21.) I cannot begin to address preemption of a state law

without first knowing exactly what federal law allegedly preempts the state law. Moreover,

Plaintiff fails to cite a single case in support of his preemption argument which holds that any

federal law preempts a state's economic loss rule. Thus, Plaintiff's preemption argument is unavailing.

Further, Plaintiff argues that "[t]he June 8, 1994, letter provides an entirely independent source of duties owed by . . . Defendants from any contract that was signed . . . [and] [t]he representations made in the June 1994 letter were never subsumed or incorporated into the later contracts between Plaintiff . . . and American National Bank." (Pl.'s Resp. to Mot. for J. on Pleadings at 15.) I decline to consider this letter because it is beyond the pleadings. The determination of a Rule 12(c) motion is confined to the pleadings and to any documents attached as exhibits to the pleadings, including a defendant's answer. *Oxendine*, 241 F.3d at 1275. Further, Plaintiff agrees that "if the Court considers the letter to be outside the pleadings, then [Plaintiff] . . . is not asking the Court to look outside the pleadings to resolve the Motion given that the representations contained in the letter and set forth in the Complaint must be taken as true." (Pl.'s Resp. to Mot. for J. on Pleadings at 27 n. 7.) Accordingly, I will not consider the letter or Plaintiff's argument incorporating such letter.

Accordingly, Defendants are entitled to judgment on the pleadings with respect to Plaintiff's claims for (1) breach of fiduciary duty with respect to the investment account; and (2) negligent failure to train, monitor, and supervise with respect to the investment account.

###### d.      *Plaintiff's Remaining Claims With Respect to the Trust Accounts*

Plaintiff's remaining claims with respect to the trust accounts allege: (1) violation of common law fiduciary duty, (Third Am. Compl. ¶¶ 36–39); (2) negligent failure to train, monitor, and supervise, (*id.* ¶¶ 49–52); and (3) breach of contract. (*Id.* ¶¶ 53–57). Defendants allege that they are entitled to summary judgment as to each of these claims with respect to the irrevocable trust accounts. (Defs.' Br. at 7.) Defendants assert that Plaintiff's claims fail as a matter of law because "under the undisputed facts [Plaintiff] has not met . . . the burden to produce evidence of damages to [Plaintiff] or the trusts from Defendants' alleged acts." (*Id.*)

From the outset, I note that proof of actual damages is not an essential element of a breach of contract claim. *Interbank Invs., LLC, v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 818 (Colo. App. 2003). Since, in an express contract action, the plaintiff is entitled to recover at least nominal damages if the plaintiff proves the existence of a contract and its breach (and there is no defense), proof of actual damages has not been included as one of the elements of the plaintiff's proof of liability. *Id.* Thus, Defendants are not entitled to summary judgment on Plaintiff's breach of contract claim with respect to the investment account based on damages, because damages is are not an essential element of the claim. It is undisputed by the parties that damages is an essential element of the breach of fiduciary duty and negligence claims. (Defs.' Br. at 8; Pl.'s Resp. at 15–21.)

Plaintiff has the burden of proof to demonstrate damages and "'must establish by a preponderance of the evidence that he has in fact suffered damage . . .'" *Western Cities Broad., Inc. v. Schueller*, 849 P.2d 44, 48 (Colo. 1993). At a minimum, a plaintiff is entitled to all actual damages for its breach of fiduciary duty and negligence claims. *Hensley v. Tri-QSI Denver Corp.*, 98 P.3d 965, 968 (Colo. 2004) (noting that in addition to actual damages, the plaintiff may be entitled to exemplary damages for breach of fiduciary duty); *Hock v. New York Life Ins. Co.*, 876 P.2d 1242, 1259 (Colo. 1994) (noting that actual damages are proper for a negligence claim). Actual damages include economic damages as well as non-economic damages. *Keohane v. Stewart*, 882 P.2d 1293, 1304 (Colo. 1994); *Gorsich v. Double B Trading Co., Inc.*, 893 P.2d 1357, 1363 (Colo. App. 1994).

Defendants assert that Plaintiff cannot prove damages associated with its claims of breach of fiduciary duty or negligence with respect to the trusts. (Defs.' Br. at 9–14.) Defendants only address economic damages. Plaintiff also requests non-economic damages. (Third Am. Compl. ¶ 60.) Plaintiff has produced sufficient evidence to survive summary judgment as to his non-economic damages, therefore, I do not need to address the evidence as it relates to economic damages. Specifically, Plaintiff offers his affidavit which states:

> I was extremely frustrated, stressed and upset by the mishandling and lapsing of these policies. I spent many sleepless nights worrying about the policies and the handling of my estate upon my death. I was frustrated that [Defendants] allowed the policies to lapse despite my serious heart problems requiring the installation of a stint in 2000. I became more upset when [Defendants] continued to provide me with second-to-die policy proposals instead of replacements with the same

coverage as the policy that was allowed to lapse at the same or lower cost with no additional cost to me.

(Pl.'s Resp., Ex. 1 ¶ 26 [Aff. of Pl.].)  Further, Plaintiff testified in his deposition that "he wasn't sleeping, [Defendants] had to do something, they had to make corrections." (Defs.' Br., Ex. A–3 at 146 [Dep. of Pl. Micale].)  Plaintiff contends that "[t]hese are additional damages which the jury should have the opportunity to consider at trial." (*Id.* at 21.)  Plaintiff is correct. Plaintiff's affidavit and deposition testimony are sufficient to create a genuine issue of fact as to damages.  Plaintiff has personal knowledge regarding how the situation surrounding his trusts affected his stress, sleep, and frustration.  At trial, Plaintiff can testify regarding all of these issues.

Defendants argue that Plaintiff's claims regarding non-economic damages "cannot salvage Plaintiff's [claims relating to the trusts] . . . for at least two reasons.  First, . . . conclusory affidavits without factual support . . . do not create an issue of material fact. . . . Second, Plaintiff's allegations . . . are wholly incredible in light of the record evidence, such that no reasonable jury could believe them." (Defs.' Reply at 21–22.)  I address each of Defendants arguments in turn.

To survive summary judgment, the "'nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.'" *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).  Plaintiff's affidavit, as to

this point, does not fit the definition of a conclusory affidavit.  Plaintiff is the only person with

personal knowledge regarding his stress, sleep, and frustration.  As stated above, Plaintiff can

freely testify at trial regarding how this situation affected his stress and sleep patterns.  Further,

Plaintiff's affidavit is consistent with his deposition testimony as to this issue.  (Defs.' Br., Ex.

A–3 at 146 [Dep. of Pl. Micale].)  Thus, Plaintiff's affidavit is not conclusory and self-serving

and is sufficient to create a genuine issue of material fact regarding damages.

Next, Defendants argue that there is no support for Plaintiff's allegations regarding non-

economic damages in the record.  (Defs.' Reply at 22.)  First, Defendants question why Plaintiff

was so distraught when he knew the policies were going to lapse and declined to take any action

to prevent the lapses.  (*Id.*)  Further, Defendants contend that Plaintiff funded the trusts from

elsewhere in his estate, thereby creating no reason Plaintiff would be "so upset by the 'lapsing of

these policies' and the 'handling of [his] estate.'"  (*Id.* at 23.)  Defendants conjecture regarding

these points are valid.  Despite their validity, Plaintiff's affidavit and deposition testimony is

enough to create a genuine issue of fact regarding damages.  While Defendants' evidence could

possibly refute any possible economic or non-economic damages at trial, Plaintiff's affidavit,

wherein he states with personal knowledge that he has suffered stress, loss of sleep, and

frustration, is enough to survive summary judgment.  (Pl.'s Resp., Ex. 1 ¶ 26 [Aff. of Pl.].)

Accordingly, Defendants are not entitled to summary judgment with respect to Plaintiff's (1)

breach of fiduciary duty, (2) negligence, and (3) breach of contract claims as they relate to the trusts.

### e.    *Statute of Limitations With Respect to the Investment Accounts*

Defendants contend that "Plaintiff's claims for damages incurred more than three years before [Plaintiff] filed his complaint are time-barred." (Defs.' Br. at 15–18; Defs.' Reply at 25–27.) Specifically, Defendants assert that "the summary judgment evidence establishes that [Plaintiff] 'discovered' his investment account claims by at least January 2001." (Defs.' Reply at 25.) "All contract actions" must be "commenced within three years after the cause of action accrues." C.R.S. § 13–80–101(1)(a), (f) (2005). In Colorado, the general discovery rule provides that claims accrue when a plaintiff knows or should know through reasonable diligence of both the injury and its cause. *Morrison v. Goff*, 91 P.3d 1050, 1058 (Colo. 2004). A claim for relief does not accrue until the plaintiff knows, or should know, in the exercise of reasonable diligence, all material facts essential to show the elements of that cause of action. *Miller v. Armstrong World Indus., Inc.*, 817 P.2d 111 (Colo.1991). Inquiry notice does not trigger the discovery rule. *Salazar v. Am. Sterilizer Co.*, 5 P.3d 357, 363 (Colo. App. 2000).

Plaintiff filed his initial complaint in this case on February 17, 2004. (Compl.) Under the applicable statute of limitations, all of Plaintiff's claims for damages related to his breach of contract with respect to the investment account had to accrue after February 17, 2001. Plaintiff's theory of liability in this case is that Defendants imprudently managed Plaintiff's

investment account by improperly allocating and diversifying his assets.  (Pl.'s Resp. at 22–23, Third Am. Compl. ¶¶ 32[a–r].)

Plaintiff was aware of the injury and cause of his claim for breach of contract with respect to the investment account more than three years before he filed his complaint.  First, Plaintiff had knowledge of the manner in which his investment account was being handled because Plaintiff received monthly and quarterly statements reflecting the performance of the account and the fact that, until 2002, the account was invested only in equities.  (Defs.' Br., Statement of Undisputed Material Facts ¶ 23; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 23.) Further, Plaintiff testified that he knew of his injury and cause prior to February 17, 2001:

> Q.   You said you talked to Mr. Rosemeyer often.  How often did you talk to him?
> A.   Oh, I don't know.
> Q.   A few times a week?
> A.   Sometimes not at all in a week and sometimes a lot.  In the years — 2000 or the middle of the year on, when the accounts started to drop, I talked to him daily sometimes, and I told him I wasn't sleeping, they had to do something, they had to make corrections.  Sometimes I called him twice in a day.
> Q.   How about in 1999, how often did you talk to Bill Rosemeyer in 1999?
> * * *
> A.   I know it was a lot after . . . In mid-2000, . . . I talked to Rosemeyer many times and told him, you know, "I can't work with you, you know.  I'll call you, see how things are doing, but you've got to protect me on this account."

(*Id.*, Ex. A–3 at 146–47 [Dep. of Pl. Micale].)  Additionally, on January 17, 2001, Plaintiff sent an article to Mr. Rosemeyer "to give [Rosemeyer] an idea that you shouldn't be in [twenty] stocks or [thirty] stocks."  (*Id.*, Ex. A–3 at 239–40, 245 [Dep. of Pl. Micale].)  Plaintiff "agree[d] with the article that [his equity investments] were not diversified," and he "disagreed with the

concentration" of his stocks and was upset that "the bank did nothing about it." (*Id.*)   Further,

Plaintiff admits to sending Defendants an allocation memorandum in 2001, which Defendants

eventually implemented. (Defs.' Reply, Ex. A–11 at 253–54 [Dep. of Pl.].)  Plaintiff's

memorandum stated, "here's the allocation . . almost the same as I sent in 2001, that I think you

ought to follow, because they asked for my input on the book." (*Id.*)  Based upon Plaintiff's

own testimony, Plaintiff knew of his injury and loss with respect to the investment account

prior to February 17, 2001.

Plaintiff's argument to the contrary asserts that his cause of action did not accrue until

2002, when Defendants met with Plaintiff and reallocated his account. (Pl.'s Resp. at 23.)

Plaintiff's argument does not address or explain his deposition testimony regarding this issue.

Not surprisingly, Plaintiff simply cites to his affidavit.  Plaintiff's affidavit states "I was not

aware that the losses were due to [Defendants'] mismanagement of the investment account for

which they had full discretionary authority." (Pl.'s Resp. at 23, Ex. 1 ¶ 28 [Aff. of Pl.].)  This

statement is in direct contradiction to Plaintiff's prior deposition testimony.  Plaintiff's

knowledge of Defendants' mismanagement is evidenced by Plaintiff's deposition testimony and

the article Plaintiff sent to Mr. Rosemeyer when he informed Mr. Rosemeyer he "disagreed with

the concentration." (Defs.' Br., Ex. A–3 at 245 [Dep. of Pl. Micale].)  Plaintiff's affidavit as to

this point is a sham, intended to "fabricate a disputed factual issue." *Franks v. Nimmo*, 796 F.2d

1230, 1237 (10th Cir. 1986).  Thus, Plaintiff has not demonstrated a genuine issue of material

fact precluding summary judgment on this issue.  Plaintiff's claims for damages with respect to

his contract claim based on the investment account that incurred more than three years before

Plaintiff filed his suit are barred by the applicable statute of limitations.[6]

Plaintiff argues that "the statute of limitations is delayed when the defendant

affirmatively conceals from the Plaintiff the existence of a cause of action."  (Pl.'s Resp. at 24.)

Plaintiff contends that "'where one is kept in ignorance, by false statements of another, of the

true situation concerning a claim which he [sic] entitled to assert against him [sic], the statute of

limitations does not begin to run against the deceived party and in favor of wrongdoer until the

former has discovered the truth.'"  (Pl.'s Resp. at 25 [quoting *Rogers v. Rogers*, 44 P.2d 909,

910–11 (Colo. 1935)].)  Plaintiff bases his entire argument on the following few sentences:

> After the losses occurred, [Plaintiff] . . . asked [Defendants] why the losses
> happened.  [Defendants] prepared an investigation for [Plaintiff] . . . to show the
> market losses in the same time period and argued that all of his losses were market
> driven and were not the cause of any errors or omissions on the part of
> [Defendants]. . . . [Defendants] made these representations although they had
> already undertaken a massive internal investigation within the bank which revealed
> that in fact the bank was failing to properly handle the investment accounts, and
> that such failures led to over a billion dollars in annual attrition . . . from
> [Defendants].

---

[6]As stated in *analysis* § 2(d), *supra*, Plaintiff's claims for breach of fiduciary duty and negligence are barred by the economic loss rule.  Thus, Plaintiff's only remaining claim with respect to the investment account is breach of contract.  Accordingly, my holding in this section regarding statute of limitations is only applicable to Plaintiff's breach of contract claim with respect to the investment account.

(Pl.'s Resp. at 25.)  The facts that Plaintiff contends were concealed to him — the massive

internal investigation —  were not revealed to Plaintiff until Plaintiff already filed his lawsuit.

(Pl.'s Resp., Ex. 1 ¶¶ 35–37 [Aff. of Pl.].)  Thus, Plaintiff cannot rely on these facts to toll the

statute of limitations.

### f.        Defendants' Counterclaim for Declaratory Relief

Defendants request summary judgment on their counterclaim related to Plaintiff's life

insurance trusts.  (Defs.' Br. at 12–14.)  Defendants request "a judicial declaration that

Defendants bear no liability or responsibility of any kind to pay future premiums, costs, or

charges of any kind required to maintain the Travelers policies."  (Answer to Second Am. Compl.

¶¶ 34.)[7]  Specifically, Defendants' counterclaim states that, "[a]bsent a judicial declaration setting

forth the parties' rights, duties, and obligations with respect to such premiums, costs, or charges,

multiple legal actions may result."  (Id. ¶ 33.)

The trust agreement provides with respect to the Travelers policies that:

Failure to Pay Premiums: If, at any time, the net income of the trust estate and the
funds furnished by me and the beneficiaries, are insufficient to pay the premiums
or other charges on the policies of insurance, the trustee shall not be required to

---

[7]The operative pleading in this case is the third amended complaint.  (Third Am. Compl.)
Defendants move for summary judgment based on their counterclaim asserted in the answer to
the second amended complaint.  (Defs.' Br. at 21.)  Defendants have not yet answered Plaintiff's
third amended complaint.  Nonetheless, I evaluate Defendants' counterclaim as set forth in the
answer to the second amended complaint.  In the event Defendants change or alter their
counterclaim in any respect when they file the answer to the third amended complaint, my ruling
as to this counterclaim will not have any effect.

> pay the premiums or other charges, and the trustee shall not be liable for its failure
> to do so.

(*Id.*, Ex. A ¶ 4.3; Ex. B ¶ 4.3.)  Defendants paid the first year's premium on both the Travelers

policies, but did not agree to pay the annual premiums on these policies in the future.  (Defs.'

Br., Statement of Undisputed Material Facts ¶ 18; *admitted at* Pl.'s Resp., Resp. to Statement of

Undisputed Facts ¶ 18.)  Plaintiff had knowledge of the terms in these policies.  (*Id.*)

Defendants, in consultation with the co-trustee and Plaintiff, obtained the Travelers policies to

replace the lapsed Conseco policies.  (Defs.' Br., Statement of Undisputed Material Facts ¶ 12;

*admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Facts ¶ 12.)  In fact, Plaintiff

informed Defendants that he did not want the Conseco policies reinstated, but rather wanted

them replaced with comparable policies from a different insurance carrier such as Travelers.

(Defs.' Br., Ex. A–1, 3 [12/8/03 Letter from Plaintiff].)  Thus, Plaintiff is bound by the terms of

the policies.  Defendants' motion for summary judgment on their counterclaim is granted to the

extent that Defendants do not have any responsibility to pay the future insurance premiums on

the Travelers policy.  This holding shall have no bearing on any potential damages Defendants

may owe Plaintiff with respect to the trust account, including but not limited to, lost principal,

lost interest, and lost opportunity.

Plaintiff argues that "it is only because . . . [Defendants] wrongful conduct allowed the

policies to lapse long before their own personnel admitted the policies would survive on their

own that creates the liability for future premiums on the . . . Defendants."  (Pl.'s Resp. at 21.)

This encompasses Plaintiffs' argument and theory of the case. Essentially, Plaintiff contends that if Defendants had not allowed the policies to lapse, Plaintiff would not be required to pay premiums associated with the Travelers policies. These are disputed issues of fact. The holding regarding Defendants' counterclaim does not have any bearing on these potential money damages. To the extent Plaintiff may be entitled to damages associated with the lapsed policies, that is an issue to be determined at trial. The language in the Travelers policy is clear, however, that Defendants do not have any liability to pay future premiums on this policy.

## 3.  *Conclusions*

Based on the foregoing it is therefore

ORDERED as follows:

1.  Defendants' motion for judgment on the pleadings (# 34) is GRANTED. The final judgment will reflect judgment in favor of Defendants and against Plaintiff, with respect to Plaintiff's claims for (1) violations of the Colorado Uniform Fiduciaries Law, (2) violations of the Colorado Prudent Investor Act, (3) breach of fiduciary duty with respect to the investment accounts, and (4) negligence with respect to the investment accounts.

2.  Defendants' motion for summary judgment (# 66) is GRANTED in part and DENIED in part. Defendants' motion is GRANTED with respect to Defendants' counterclaim and Plaintiff's claims for damages with respect to breach of contract for the investment account to the

extent they are time barred.  Defendants' motion is DENIED with respect to Plaintiff's remaining claims related to the trusts.

3.   Defendants' motion to strike (# 88) is DENIED.

4.   The court will hold a Final Pretrial Conference commencing at 2:15 o'clock p.m. on Friday, **October 14, 2005**, in Courtroom A1001 of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado.  In preparing for and participating in the conference, the parties and counsel will (1) follow the Instructions for Preparation and Submission of Final Pretrial Order, a copy of which can be downloaded from the court's web site, specifically http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord_ins.pdf and (2) utilize the specific template located at http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord.wpd  These specific web addresses should be used to insure that the proper format is observed.

5.   The motions hearing set to commence at 9:30 o'clock a.m. on August 10, 2005 is hereby VACATED.

Dated this  _10th_ day of August, 2005.


BY THE COURT:

s/Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge